UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Key West Division

Case Number: 13-10103-CIV-MARTINEZ-GOODMAN

BRAD BUEHRLE,

    Plaintiff,

vs.

CITY OF KEY WEST,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Revised Motion for Partial Summary Final Judgment (D.E. No. 21) and Defendant City of Key West's Motion for Summary Judgment (D.E. No. 35). The parties have filed responses (D.E. Nos. 26 & 43) and replies (D.E. Nos. 33 & 48) to the motions. The Court held a hearing on the motions. After careful consideration and for the reasons set forth herein, the Court denies Plaintiff's motion for partial summary judgment and grants Defendant's motion for summary judgment.

### Background

Plaintiff desires to open a tattoo establishment in the Historic Residential and Commercial Duval Street Gulfside Zoning District ("HRCC-1 District") in Key West, Florida. (D.E. No. 20 at 1-2). On several occasions, Plaintiff attempted to file an application with the Defendant to obtain a business tax receipt to operate a tattoo establishment in the HRCC-1 District. *Id.* at 2. Brandon Cunningham, Defendant's Senior Planner, advised Plaintiff that a tattoo establishment was not zoned in the HRCC-1 District. (D.E. No. 27 at 9). An individual in Defendant's Licensing Division confirmed what the Senior Planner told Plaintiff. *Id.*

Case 4:13-cv-10103-JEM   Document 56   Entered on FLSD Docket 09/30/2014   Page 2 of 8

Tattoo establishments are permitted in the City of Key West as conditional uses in the General Commercial District.[1] (D.E. No. 20 at 3). Two tattoo establishments are permitted on Duval Street in the Historic Duval Street Oceanside District as lawful non-conforming uses. (D.E. No. 27 at 8). Defendant approved a third tattoo establishment as a conditional use on North Roosevelt Boulevard in the General Commercial District. *Id.* The City of Key West is an island located at the southern end of the Florida Keys that is only four miles long and one and a half miles wide. *Id.* at 4.

Plaintiff filed a First Amended Complaint alleging the following causes of action: (a) First Amendment violation - freedom of speech (Count I); (b) Fourteenth Amendment violation - equal protection and privileges and immunities (Count II); and (c) Fourteenth Amendment violation - due process (Count III). (D.E. No. 1-3).

**Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-

---

[1] A conditional use is defined as "a use permitted in a particular zoning district only upon successful demonstration that the use as proposed on a specific site will comply with all the conditions and standards for the location, design, and/or operation of such use as specified in the land development regulations and as authorized by the City." Key West, Fla., Code § 86-9.

moving party. *Anderson*, 477 U.S. at 248; *Matsushita*, 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, when considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

By contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex Corp.*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323. The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324. Once the moving party discharges its initial burden, a non-moving party

who bears the burden of proof must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

### First Amendment Claim - Pure Speech

The parties acknowledge that there is no controlling precedent regarding whether tattooing is an expressive activity entitled to First Amendment protection. Defendant argues that the majority of courts have found that the process of tattooing is not expressive activity. (D.E. No. 35 at 8); *see, e.g., Hold Fast Tattoo, LLC v. City of North Chicago*, 580 F. Supp. 2d 656 (N.D. Ill. 2008); *Kennedy v. Hughes*, 596 F. Supp. 1487 (D. Del. 1984); *Yurkew v. Sinclair*, 495 F. Supp. 1248 (D. Minn. 1980). Plaintiff responds that the Ninth Circuit, the highest federal court to address the issue, held that the business of tattooing constitutes pure speech. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010) ("We do not profess to understand the work of tattoo artists to the same degree as we know the finely wrought sketches of Leonardo da Vinci or Albrecht Dürer, but we can take judicial notice of the skill, artistry, and care that modern tattooists have demonstrated."). The Ninth Circuit noted the following:

> The principal difference between a tattoo and, for example, a pen-and-ink drawing, is that a tattoo is engrafted onto a person's skin rather than drawn on paper. This distinction has no significance in terms of the constitutional protection afforded the tattoo; a form of speech does not lose First Amendment protection based on the kind of surface it is applied to.

*Id.* at 1061. The Ninth Circuit held, "as with writing or painting, the tattooing process is inextricably intertwined with the purely expressive product (the tattoo), and is itself entitled to full First Amendment protection." *Id.* at 1062.

This Court follows the reasoning of the Ninth Circuit that the process of tattooing is pure speech.

### First Amendment Claim - Reasonable Time, Place, and Manner Restrictions

Defendant argues that it remains entitled to judgment as a matter of law because the subject regulations are content neutral and reasonable time, place, and manner restrictions on tattoo establishments. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). A regulation is a reasonable time, place, and manner restriction on protected speech where the restriction: (1) is "justified without reference to the content of the regulated speech;" (2) is "narrowly tailored to serve a significant governmental interest;" and (3) "leave[s] open ample alternative channels for communication of the information." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Plaintiff concedes that the subject regulations are justified without reference to the content of the regulated speech. (D.E. No. 33 at 7). Plaintiff, however, argues that Defendant's regulations (a) are not narrowly tailored to serve a significant government interest; and (b) do not leave open ample alternative channels for communication. (D.E. No. 33 at 7-10).

Defendant argues the subject regulations are not substantially broader than necessary to serve significant government interests. Defendant asserts that the promotion of a major industry and the protection of the general welfare of society are significant government interests. *See, e.g., Smith v. City of Fort Lauderdale, Fla.*, 177 F.3d 954 (11th Cir. 1999); *One World One Family Now v. City of Miami Beach*, 175 F.3d 1282 (11th Cir. 1999). Defendant notes that the subject regulations are "for the health, safety, and welfare of the residents and visitors of the City," and "to eliminate or to reduce secondary effects of such establishments upon both residents

and visitors." Key West, Fla., Code § 122-1541. Defendant states that the specific "potential and actual adverse secondary effects" found by the City Commission are "the potential deterioration of a preserved historic district; an increase in the incidence of disease; and land use incompatibilities." Key West, Fla., Code § 122-1543(a).

Defendant argues that its limitations on tattoo establishments are not substantially broader than necessary to further these interests. Defendant notes that the City of Key West is a four mile long and one a half mile wide island, and, therefore, has a relatively small and finite amount of space. Defendant asserts that a portion of that finite area is part of the Old Town Historic Preservation area and is in zoning districts designated as being "historic." Key West, Fla., Code § 122-92. Defendant argues that if the goal of the regulations is maintaining the character and fabric of the Historic Districts, which traditionally did not contain tattoo establishments, then limiting tattoo establishments to the General Commercial Districts is the least restrictive means of accomplishing this goal.

Defendant argues that its regulations leave open ample alternative channels for engaging in the process and business of tattooing. Defendant asserts that the regulations permit tattoo establishments as a conditional use in the General Commercial District, meaning Plaintiff could own and operate a tattoo establishment along a nearly two mile stretch of Roosevelt Boulevard. Key West, Fla., Code § 122-418. Moreover, Defendant contends that Plaintiff could practice the process of tattooing for money at either of the lawful non-conforming tattoo establishments along Duval Street. (D.E. No. 36 at 2-3).

This Court agrees with Defendant that its regulations on tattoo establishments are content neutral and reasonable time, place, and manner restrictions.

### Equal Protection and Due Process Claims

Plaintiff's equal protection challenge focuses on the differential treatment between tattoo establishments and art galleries. (D.E. No. 43 at 7). Defendant responds that Plaintiff cannot prevail on its equal protection claim, because it cannot establish that "(1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff." *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996). Defendant argues that art galleries and tattoo establishments are not similar in all relevant aspects. (D.E. No. 48 at 9). Defendant notes that a tattoo establishment involves the creation of permanent mark on a person by injecting indelible ink into the person's skin, while art galleries simply display pieces of art for sale. *Id*. The Ninth Circuit noted the following:

> It is true that the nature of the surface to which a tattoo is applied and the procedure by which the tattoo is created implicate important health and safety concerns that may not be present in other visual arts, but this consideration is relevant to the governmental interest potentially justifying a restriction on protected speech, not to whether the speech is constitutionally protected.

*Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010). The Court agrees with Defendant that tattoo establishments and art galleries are not similarly situated. As such, Plaintiff's equal protection claim fails.

With respect to its Due Process arguments, Plaintiff argues that the same time, place, and manner test, as discussed above, should be applied. (D.E. No. 43 at 6). As such, Plaintiff's due process claim fails. After careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

1. Plaintiff's Revised Motion for Partial Summary Final Judgment (D.E. No. 21) is

**DENIED.**

2. Defendant City of Key West's Motion for Summary Judgment (D.E. No. 35) is

**GRANTED.**

3. Final judgment shall be entered by separate order.

4. This case is **CLOSED**, and all pending motions are **DENIED AS MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 29 day of September, 2014.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record