UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO.: 13-10103-CIV-MARTINEZ-GOODMAN

BRAD BUEHRLE,

    Plaintiff,

vs.

CITY OF KEY WEST

    Defendant.

_____/

## DEFENDANT, CITY OF KEY WEST'S, PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, CITY OF KEY WEST ("City"), by and through its undersigned attorneys, files its Proposed Findings of Facts and Conclusions of Law in advance of the upcoming non-jury trial and in support would state:

1. The Plaintiff, BRAD BUEHRLE ("Buehrle"), filed suit against the City alleging that the City's ordinance regulating the number and location of tattoo establishments violated his right to freedom of expression under the First Amendment. DE 1-3.

2. The Eleventh Circuit reversed summary judgment in favor of the City agreeing with the Court that "that tattooing constitutes artistic expression protected by the First Amendment," "but [] reverse[d] the summary judgment because, on the record before [it], the City ha[d] failed to show that the ordinance [wa]s a reasonable time, place, and manner restriction." Buehrle v. City of Key W., 813 F.3d 973, 975 (11th Cir. 2015).

3. Following remand, the Court reopened the case for a "bench trial addressing Plaintiff's entitlement to any damages or fees in this action." DE 99 at 2.

## I. FINDINGS OF FACT

4. During the relevant time period, the Plaintiff was a resident of Summerland Key, Florida.

5. The Plaintiff owns a tattoo establishment in Richmond, Virginia, called Lucky 13, through his ownership of a corporation called Lucky 13 Tattoo Shop, LLC. Lucky 13 employs approximately 12 individuals which includes three body piercers and nine tattoo artists, who are all employed by the corporation as independent contractors. At Lucky 13, the tattoo artists and body piercers are paid a fee for each service provided to the customer. A portion of that fee is retained by the corporation and the remaining goes to the tattoo artist or body piercer. This arrangement is common in the tattoo industry.

6. Buerhle's tax records demonstrate the following:

   (a) In 2008, Buerhle reported his annual wages from Lucky 13 as $21,840 and his business income of $2,634;

   (b) In 2009, Buerhle reported his annual wages from Lucky 13 as $21,840 and his business income $840;

   (c) In 2010, Buerhle reported his annual wages from Lucky 13 as $24,000 and his business income of $10,114;

   (d) In 2011, Buerhle reported his annual wages from Lucky 13 as $28,000 and a business loss of $10,252; and

   (e) In 2012, Buerhle reported his annual wages from Lucky 13 as $20,000 and his business income of $2,200.

  (f) In 2013, Buerhle reported his annual wages from Lucky 13 as §26,199 and his business income of $26,881.

  (g) In 2014, Buerhle reported his annual wages from Lucky 13 as $00.00 and a business loss of $51.

  (h) In 2015, Buerhle reported his annual wages from Lucky 13 as $28,000 and a business loss of $11,171.

  (i) In 2016, Buerhle reported his annual wages from Lucky 13 as $42,001 and his business income of $32,211.

 7. Buerhle was not licensed in the State of Florida as a tattoo artist.

 8. In June 2012, the Plaintiff moved from Glen Allen, Virginia to Monroe County, Florida.

 9. The Plaintiff identified 130 Simonton Street in Key West, Florida as a potential location for a tattoo establishment. The Plaintiff intended to provide tattooing and body piercing services and to sell paintings.

 10. The Plaintiff entered into a commercial lease for the space, but was not required to pay any money under it until he received approval from the City to open a tattoo establishment.

 11. The commercial lease was entered into between Ghost Ship Tattoo Gallery, Inc., an entity owned by Buerhle, and Historic Tours of America, Inc.

 12. After signing a lease on the commercial space, the Plaintiff contacted Brandon Cunningham, the City's Senior Planner, regarding his desire to open a tattoo establishment at 130 Simonton Street. Cunningham advised the Plaintiff that a tattoo establishment was not zoned in that area. The Plaintiff also spoke with an individual in the City's Licensing Division regarding his desire

to open a tattoo establishment at 130 Simonton Street, who confirmed what Cunningham had told the Plaintiff. The Plaintiff never submitted an application to the City's Licensing Division to obtain a business tax receipt for his proposed business and instead filed suit.

13. The Plaintiff intended to call his tattoo establishment Ghost Ship Tattoo Art Gallery.

14. The Plaintiff has not sought to locate a tattoo establishment anywhere other than the 130 Simonton Street address.

15. The Plaintiff never sought to operate as a tattoo artist out of either of the two existing tattoo parlors in the City.

16. The Plaintiff did not want to work for any of the existing tattoo parlors as a tattoo artist because he wanted to own his own business.

17. The Plaintiff retained an expert, DeLisi & Ghee, Inc., who opined that "the lost profits to Brad Buerhle/Ghost Ship Tattoo Gallery, Inc. attributable to a lease termination at 134 Simonton Street, Key West, Florida as of October 19, 2012 to be approximately: **$700,000 SEVEN HUNDRED THOUSAND DOLLARS**."

## II. CONCLUSIONS OF LAW

### A. The Plaintiff has not Presented any Evidence of a Specific, Actual Injury he Sustained from the City's Ordinance

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986); accord Wright v. Sheppard, 919 F.2d 665, 669 (11th Cir. 1990).

"[C]ompensatory damages under § 1983 may be awarded **only** based on **actual injuries** caused by the defendant and **cannot** be presumed or based on the **abstract value** of the constitutional rights that the defendant violated." Slicker v. Jackson, 215 F.3d 1225, 1229 (11th Cir.2000) (emphasis added); see Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); Carey v. Piphus, 435 U.S. 247, 257–58, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Consequently, when a plaintiff does not provide any "proof of a specific, actual injury caused by" the defendant's conduct, the plaintiff is not entitled to compensatory damages. Kelly v. Curtis, 21 F.3d 1544, 1557 (11th Cir. 1994); see Akouri v. State of Florida Dep't of Transp., 408 F.3d 1338, 1345 (11th Cir. 2005) ("concluding that although a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation, 'the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages.'" quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir.1996)).

The Supreme Court has construed § 1988 to mean that "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." Gilmere v. City of Atlanta, Ga., 864 F.2d 734, 739 (11th Cir. 1989) (quoting Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 240, 239, 90 S.Ct. 400, 403, 24 L.Ed.2d 386 (1969). The Court's task is to "adapt [ ] common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." Carey, 435 U.S. at 258, 98 S.Ct. at 1049, 55 L.Ed.2d 252. These principles apply even in situations were the damages are in the form of lost profits.

5

ATM Exp., Inc. v. Montgomery, Alabama, 516 F. Supp. 2d 1242, 1249 (M.D. Ala. 2007) (stating that, "[i]n calculating [the plaintiff's] lost profits, the Court recogni[d]es the basic purpose of § 1983 damages [wa]s 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" quoting Piphus, 435 U.S. at 254).

The general rule requiring plaintiffs to mitigate damages applies in actions under 42 U.S.C. § 1983. See, e.g., Murphy v. City of Flagler Beach, 846 F.2d 1306, 1309–10 (11th Cir. 1988). Plaintiffs in employment-related actions are generally "'required to mitigate damages by being reasonably diligent in seeking employment substantially equivalent to the position [ ] he was denied.'" Weatherly v. Ala. State Univ., 728 F.3d 1263, 1272 (11th Cir. 2013) (quoting Smith v. Am. Serv. Co. of Atlanta, 796 F.2d 1430, 1431 (11th Cir. 1986)). A plaintiff has a duty to seek "employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as he would have had with the lost position. Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1527 (11th Cir. 1991), superseded by statute on other grounds as recognized in Munoz, 223 F.3d at 1347.

In a lost profits cases, the "amount of lost profits recoverable will be dependent, in part, upon whether the [Plaintiff] discharged [its] duty to mitigate [its] damages." Zinn v. GJPS Lukas, Inc., 695 So.2d 499, 501 (Fla. 5th DCA 1997); Sostchin v. Doll Enterprises, Inc., 847 So. 2d 1123, 1128 n5 (Fla. 3d DCA 2003) ("[W]ere [a] business suffers from [an] act of negligence, the amount of lost profits recoverable will depend, in part, upon whether the plaintiff discharged their duty to mitigate their damages"); Graphic Assoc's, Inc. v. Riviana Rest. Corp., 461 So.2d 1011, 1014 (Fla. 4th DCA 1984) (holding that the doctrine of avoidable consequences prevents a party from recovering those

lost profits attributed to a wrongdoer which the injured party could have mitigated without undue risk, burden, or humiliation).

At trial, the Plaintiff failed to present any evidence of a specific, actual injury he sustained as a result of the City's conduct. He presented no evidence of any out of pocket expenses or damages as a result of the City's refusal to process his application for a business tax receipt for his proposed tattoo establishment business. Even the commercial license he signed on behalf of a non-party corporate entity was terminated without requiring Buehrle to pay any money under it.

Moreover, the Court finds that Buehrle has failed to mitigate his damages. The evidence at trial showed that, after being unable to open a tattoo business, Buehrle took no steps to mitigate his damages such as seeking to work as a tattoo artist at one of the already-existing tattoo business in the City -- the quickest route to engaging in his protected form of expression in the City -- or seeking to open the shop in a different location in the Florida Keys.

Based on his failure to provide any evidence of an actual injury and to mitigate his damages, the Court finds that Buehrle is not entitled to compensatory damages. See Kelly, 21 F.3d at 1557. Given the absence of sufficient evidence, the Court will award Buehrle nominal damages in the amount $1.00. See Amnesty Intern., USA v. Battle, 559 F.3d 1170, 1177 (11th Cir.2009) (§ 1983 "allows for recovery of nominal damages where the plaintiff's constitutional rights were violated but the violation did not result in any injury giving rise to compensatory damages.").

**B. The Plaintiff's Damages Expert's Testimony is Not Relevant and too Speculative**

The Plaintiff's expert opined that "the lost profits to Brad Buerhle/Ghost Ship Tattoo Gallery, Inc. attributable to a lease termination at 134 Simonton Street, Key West, Florida as of October 19, 2012 to be approximately: **$700,000 SEVEN HUNDRED THOUSAND DOLLARS**." The Court

7

finds that such evidence does not constitute evidence of a specific, actual sustained by Buehrle as a result of the City's conduct for at least two reasons.

First, it is not relevant to the claim raised in the Complaint. Here, only Bruehle and not Ghost Ship Tattoo Gallery, Inc. (or any other corporate entity) filed suit. Federal courts have created a prudential limitation on jurisdiction, namely that "a litigant must assert his own legal rights and interests and not ordinarily rely on the rights and interests of third parties." Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994). Moreover, under § 1983, only the "party injured" may bring a civil action in the federal courts for the specified injuries, and because § 1983 considers corporate entities to be "persons," only the corporation itself are permitted to prosecute its claims of alleged injury. Quarles v. City of E. Cleveland, 202 F.3d 269, *2-*3 (6th Cir. 1999) ; see Monell v. Department of Soc. Servs., 436 U.S. 658, 688, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (for § 1983 purposes, the term "person" may be applied "to bodies politic and corporate"); see also Miles v. Okun, 430 F.3d 1083 (9th Cir. 2005); Musick v. Federal Nat'l Mortgage Ass'n, 1995 U.S. App. LEXIS 14674, *3 (10th Cir. June 12, 1995).

While Buerhle undoubtedly has standing to pursue damages for his own injuries that resulted from the City's conduct, he may not recover damages on behalf of third party corporate entities who are not parties to the litigation. Under the shareholder-standing rule, the shareholder-standing rule, a shareholder generally cannot sue for indirect harm he suffers as a result of an injury to the corporation. Elandia Int'l, Inc. v. Koy, No. 09-20588-CIV, 2010 WL 2179770, at *6 (S.D. Fla. Feb. 22, 2010), report and recommendation adopted sub nom. Elandia Int'l, Inc. v. Ah Koy, No. 09-20588-CIV-MORENO, 2010 WL 2196040 (S.D. Fla. June 1, 2010); see USA Interactive v. Dow Lohnes & Albertson, P.L.L.C., 328 F.Supp.2d 1294, 1309 (M.D.Fla.2004) (citing Franchise Tax Bd.

of Calif. v. Alcan Aluminum Ltd., 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990)); Warth v. Seldin, 422 U.S. 490, 499 (1975); Rawoof v. Texor Petroleum Co., 521 F.3d 750, 757 (7th Cir. 2008); Erlich v. Glasner, 418 F.2d 226, 227 (9th Cir. 1969) (finding that an individual could not "maintain an action under the Civil Rights Act for damages suffered by a corporation, of which he is a stockholder."). Florida law has a similar prohibition. Chaul v. Abu-Ghazaleh, 994 So. 2d 465, 467 (Fla. 3d DCA 2008). As a result, the expert's opinion is simply not relevant to the extent he opines regarding lost profit damages to Ghost Ship Tattoo Gallery, Inc..

Second, the expert's opinion is too speculative. Florida courts have held that "[t]he general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. But the rule is not an inflexible one, and if profits can be established with reasonable certainty, they are allowed." Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 415 So.2d 865, 867 (Fla. 1st DCA 1982); see also Levitt-ANSCA Towne Park P'ship v. Smith & Co., 873 So. 2d 392, 396 (Fla. 4th DCA 2004); Fu Sheng Indus. Co., v. T/F Sys., Inc., 690 So.2d 617, 622 (Fla. 4th DCA 1997).

"Any 'yardstick' used to show the amount of profits must be reasonable, and the loss of the profits as a result of the [defendant's conduct] must be reasonably certain. Lost profits must be established with a reasonable degree of certainty and must be a natural consequence of the wrong." Sostchin v. Doll Enters., Inc., 847 So.2d 1123, 1128 (Fla. 3d DCA 2003) (internal citations omitted). "The projected profits cannot be mere speculation or conjecture, but the inability to prove a precise damages amount will not prevent a plaintiff from recovering so long as it is clear that some loss resulting from the defendant's actions is certain." Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC, 183 So. 3d 374, 382 (Fla. 3d DCA 2013) (internal citation omitted).

The Plaintiff's damages expert's use of the yardstick method is too speculative and not reliable in this case. Although the expert recognized that Buerhle had been operating a tattoo business in Richmond, Virginia, the expert failed to utilize it as the yardstick and, instead, chose to utilize three other unidentified tattoo businesses as comparators. The Court finds that using other tattoos business as comparators is too speculative where a much better comparator exists -- the tattoo business actually being run by the Plaintiff.[1] See also Shadow Lakes, Inc. v. Cudlipp Const. & Dev. Co., 658 So. 2d 116, 117 (Fla. 2d DCA 1995) ("When the measure of damages is lost profits, the loss must be proven with a reasonable degree of certainty before it is recoverable. The mind of a prudent impartial person should be satisfied that the damages are not the result of speculation or conjecture.") (internal citation omitted). However, any detailed analysis of Buerhle's tax records is unnecessary given his failure to present sufficient evidence of an actual, specific injury.

Dated: January 16, 2018.

Respectfully submitted,

/s/Michael T. Burke
Michael T. Burke, Esquire (338771)
Burke@jambg.com
Cardona@jambg.com
Hudson C. Gill, Esquire (15274)
Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, Florida 33304
Telephone: 954-463-0100
Attorneys for Defendant City of Key West

---

[1] For example, during the period from 2008 through 2016, Buehrle's reported average annual wages were $23,543 and his reported average annual business income was $4,223. If the Court were inclined to award Buerhle compensatory damages, these figures would represent the best evidence of his actual damages from the inability to open a tattoo business in the City.

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on the 16th day of January, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                JOHNSON, ANSELMO, MURDOCH, BURKE,
                PIPER & HOCHMAN, P.A.
                *Counsel for City of Key West*
                2455 East Sunrise Boulevard, Ste. 1000
                Fort Lauderdale, FL 33304
                Telephone: 954/463-0100
                Facsimile:   954/463-2444

         BY*:*   */s/Michael T. Burke*
                MICHAEL T. BURKE
                Fla. Bar No  338771
                HUDSON C. GILL
                Fla. Bar No. 15274

**SERVICE LIST**
Brad Buehrle vs. City of Key West
Case No. 13-cv-10103-JEM
United States District Court, Southern District of Florida, Key West Division


Brett Tyler Smith, Esq.
Wayne LaRue Smith, Esq.
Court-filings@TheSmithLawFirm.com
Bsmith@TheSmithLawFirm.com
WSmith@TheSmithLawFirm.com
The Smith Law Firm, P.A.
333 Fleming Street
Key West, FL 33040
Telephone:  305-296-0029
Facsimile:  305-296-9172


Michael T. Burke, Esquire
Burke@jambg.com
Cardona@jambg.com
Hudson C. Gill, Esquire
Hgill@jambg.com
blanca@jambg.com
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone:  954-463-0100
Facsimile:  954-463-2444